UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EUNICE JOHNSON,

                       Plaintiff,                        Civil Action No. 17-10452
                                                    Honorable Matthew F. Leitman
                                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                       Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 16]

Plaintiff Eunice Johnson ("Johnson") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #15, 16), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.     RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Johnson is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**Doc. #16**) be **DENIED**, Johnson's Motion for Summary Judgment (**Doc. #15**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

## II.    REPORT

### A.    Background

Johnson was 42 years old at the time of her alleged onset date of May 1, 2007. (Tr. 199). She completed the tenth grade but had no further education. (Tr. 31). Johnson has prior work history folding clothes and as a fast food worker, but she stopped working in May 2000 because her legs were "bothering" her. (Tr. 31, 228-29). She has a history of illegal drug abuse but has been clean since 2012. (Tr. 469). She alleges disability primarily as a result of bipolar disorder, back pain, and leg pain. (Tr. 31, 228, 234).

After Johnson's application for SSI was denied at the initial level on October 17, 2012 (Tr. 95-98), she timely requested an administrative hearing, which was held on November 22, 2013, before ALJ B. Lloyd Blair. (Tr. 45-63). On February 14, 2014, the ALJ issued a written decision finding that Johnson was not disabled under the Act. (Tr. 78-86). Subsequently, on June 5, 2015, the Appeals Council vacated the ALJ's decision and remanded the matter for a new hearing and decision. (Tr. 91-93). Thus, another administrative hearing was held before ALJ Blair on August 20, 2015; Johnson, who was represented by attorney Kiel Roeschke, testified at that hearing, along with vocational expert Diane Regan. (Tr. 26-44). On October 27, 2015, ALJ Blair issued a written decision again finding that Johnson is not disabled under the Act. (Tr. 10-20). On January 5, 2017, the Appeals Council denied review. (Tr. 1-3). Johnson timely filed for judicial review of the final decision on February 13, 2017. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Johnson's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## B.    The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:   If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:   Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps .... If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this sequential analysis, the ALJ found that Johnson is not disabled under the Act. At Step One, the ALJ found that Johnson has not engaged in substantial gainful activity since June 25, 2012 (the application date). (Tr. 13). At Step Two, the ALJ found that she has the severe impairments of schizoaffective disorder, bipolar disorder, opioid dependence, alcohol abuse, and lumbago. (*Id.*). At Step Three, the ALJ found that Johnson's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Johnson's residual functional capacity ("RFC"), concluding that she is capable of performing unskilled, light work, with the following additional limitations: no climbing of ladders, ropes, or scaffolds; may occasionally use ramps and stairs, kneel, crouch, crawl, twist, and bend; restricted to simple work at a Specific Vocational Preparation ("SVP")[1] level of 1 or 2; no work involving concentration on detailed tasks, multitasking, computing, calculating, problem-solving, or reading; job must allow two daily instructions from a supervisor; no team work or work in close proximity to co-workers; no requirement to take initiative or make independent decisions; and must be able to work at a flexible pace without having production quotas or an up-line or down-line co-worker dependent on her productivity. (Tr. 14).

At Step Four, the ALJ concluded, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Johnson is capable of performing the jobs of sorter (5,000 jobs in southeast Michigan), packer (3,000 jobs), and visual inspector (1,000 jobs). (Tr. 19). As a result, the ALJ concluded that Johnson is not disabled under the Act. (*Id.*).

---

[1] The Dictionary of Occupational Titles lists an SVP time for each described occupation. For instance, using the skill level definitions in 20 C.F.R. § 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. *See Soc. Sec. Rul*. 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

**C.    Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by

substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### D. Analysis

In her motion, Johnson argues that the ALJ erred in giving "no weight" to the opinions of her treating psychiatrist, Hyder Makki, D.O. (Doc. #15 at 12-13). In the first opinion at issue, dated February 15, 2013, Dr. Makki indicated that he had been treating Johnson once or twice a month since June of 2012. (Tr. 328). Dr. Makki further indicated that Johnson suffers from bipolar disorder, that her Global Assessment of Functioning ("GAF")[2] score is 55, and that her prognosis is guarded. (*Id.*). When asked to describe his clinical findings, Dr. Makki identified:

> Euphoric, labile & tearful affect, paranoid delusions, 4-5 [hours] sleep/night, impaired memory in all spheres, intact judgement [sic], fair insight/decision making.

(*Id.*). Dr. Makki further opined that Johnson is unable to meet competitive standards when it comes to dealing with work stress and completing a normal workday or work week without interruptions from psychological symptoms, and has no "useful ability to function" in terms of remembering work-like procedures and maintaining attention for two-hour segments. (Tr. 330). In explaining the limitations he assessed, Dr. Makki noted that Johnson "reports memory difficulty in three spheres & has interpersonal difficulties & [history] of abuse"; "must write information down to remember"; and "struggles [with] stress due to labile mood." (*Id.*).

Dr. Makki completed a second Mental Residual Functional Capacity Questionnaire on July 15, 2015, again opining that Johnson "still struggles with anxiety [and] irritability"; is

---

[2] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

unable to meet competitive standards in numerous respects (including understanding and remembering very short and simple instructions, maintaining attention for two-hour segments, maintaining regular attendance, working in coordination with or proximity to others without being unduly distracted, performing at a consistent pace, and dealing with normal work stress). (Tr. 440-43). In both 2013 and 2015, Dr. Makki opined that Johnson's impairments would cause her to miss work more than four days per month. (Tr. 331, 443).

Johnson now argues that the ALJ erred in rejecting Dr. Makki's opinions. Indeed, the treating physician rule "mandate[s] that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). "If the ALJ declines to give a treating source's opinion controlling weight, [the ALJ] must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see, e.g.*, *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) ("Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927."). "Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given to a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (quoting 20 C.F.R. § 404.1527(d)(2)). Those reasons "must be 'supported by the evidence in the case record, and

must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting *Soc. Sec. Rul. ("SSR") 96-2p*, 1996 WL 374188, at \*5 (July 2, 1996)).

In his decision, the ALJ evaluated Dr. Makki's opinions as follows:

> A *Medical Source Statement* was completed in handwriting markedly different from Dr. Makki's signature. The statement is given little weight as its authenticity cannot be guaranteed. For example, originally "infrequent attendance" was written, but the "in" was subsequently crossed off to read "frequent attendance." This makes little sense as it follows "individual therapy 1X/month." For this reason undersigned has given no weight to this exhibit. Furthermore it is not supported by the treatment records. A second *Medical Source Statement* allegedly authored by Dr. Makki was completed in July 2015, again with extreme limitations but once again the handwriting on the form, which is very difficult to read, does not match Dr. Makki's signature nor is it supported by the treatment records. Therefore the undersigned has given it no weight.

(Tr. 17). For the reasons set forth below, the ALJ failed to provide "good reasons" – supported by substantial evidence – for his rejection of Dr. Makki's opinions.

To begin with, the ALJ discounted these opinions because he apparently was not convinced that they were, in fact, the opinions of Dr. Makki.[3] (Tr. 17 ("authenticity [of the 2013 opinion] cannot be guaranteed" and 2015 opinion was only "allegedly authored" by Dr. Makki)). Discounting Dr. Makki's opinion on this basis is perplexing, as it is not inconceivable that a nurse (or other member of a physician's staff) would complete portions of the four-page Mental

---

[3] Johnson first argues that to the extent the ALJ questioned the authenticity or integrity of these medical opinions, he "had a duty to solve the conflict by re-contacting the treating physician, which was not done." (Doc. #15 at 13). In support of this argument, Johnson argues that if "the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for an opinion." (*Id.* (quoting *SSR 96-5p*, 1996 WL 374183, at \*2 (July 2, 1996)). As the Commissioner points out, however, the duty to re-contact a treating physician was eliminated, effective March 26, 2012, and under the new rule, the decision to re-contact a treating source is left to the ALJ's discretion. (Doc. #16 at 7 (citing 20 C.F.R. § 416.920b(c)(1)). Because the Court finds remand appropriate on other grounds, it declines to address the merits of Johnson's argument that the ALJ erred in failing to re-contact Dr. Makki.

Residual Functional Capacity Questionnaire, and the Court does not see how that fact would invalidate the entirety of the opinion the physician signed off on.  Indeed, the fact that Dr. Makki signed both forms certainly suggests that he was in agreement with the opinions expressed.  In *Santiago v. Barnhart*, 441 F. Supp. 2d 620 (S.D.N.Y. 2006), the court considered a similar factual scenario and held that the ALJ erred in discounting the opinion of the plaintiff's treating physician (Dr. Nunez) simply because that opinion may have been prepared by a different physician (Dr. Malinowska), stating:

> For example, the ALJ completely disregarded Nunez's opinion … on the ground that Nunez expressed his view by signing a report that the ALJ believes was written by Malinowska.[]  However, even if the ALJ's handwriting analysis is accurate and the report was written by Malinowska, there is no reason to believe that the report Nunez signed does not reflect his own view.  Nor is there any legal principle which states that a doctor must personally write out a report that he signs for it to be afforded weight.  *See Ruiz v. Apfel*, 98 F. Supp. 2d 200, 209 (D. Conn. 1999) (holding that ALJ must give weight to a report signed by doctor even though it was prepared by someone else).  Since Nunez signed his name to the report and there is no evidence indicating that the report does not represent his opinion, the ALJ erred in discounting Nunez's opinion on this basis alone.

*Id.* at 628.  This Court agrees with the *Santiago* court's reasoning and finds that, to the extent ALJ Blair discounted Dr. Makki's opinions because he believed (rightly or wrongly) that they were not completed in their entirety by Dr. Makki, in his own handwriting, this was not proper.

The Commissioner argues, however, that this was not the only reason the ALJ rejected Dr. Makki's opinions, but that he also concluded that "the assessments did not find support in the record."  (Doc. #16 at 7).  The problem, though, is that the entirety of the ALJ's analysis in this respect consists of unsupported, conclusory statements that these opinions are "not supported by the treatment records."  (Tr. 17).  Courts have recognized that blanket statements such as this fall far short of satisfying the "good reasons" requirement.  *See, e.g., Guyaux v. Comm'r of Soc. Sec.*, 2014 WL 4197353, at *16 (E.D. Mich. Aug. 22, 2014) (ALJ's rejection of treating physician

opinion "based on the bare statement that it is conclusory and not supported by the medical evidence" was insufficient, warranting remand); *Castro v. Comm'r of Soc. Sec.*, 2013 WL 4012824, at *10 (E.D. Mich. Aug. 6, 2013) (ALJ's "one-sentence reason for rejecting the [treating physician's] assessment, i.e., that 'it is not consistent with the treatment records or the record as a whole,' is insufficient"). Indeed, this Court recently remanded a case to the ALJ on nearly identical facts, recognizing that the ALJ failed to articulate good reasons, supported by substantial evidence, for rejecting the treating physician's opinion. *See Rines v. Comm'r of Soc. Sec.*, 2017 WL 4786144, at *3-5 (E.D. Mich. Oct. 24, 2017). In *Rines* the Court explained:

> The dismissal of [treating physician] Dr. Price's opinions falls far short of the required "specific" explanation for discounting a treating source's opinions. The ALJ's statement that Dr. Price's opinions "are not consistent with or supported by the record as a whole" is unhelpful boilerplate that sheds no light on precisely which portions of the record undermine Dr. Price's opinions. Nor does the ALJ explain *how* or *why* the record is incompatible with Dr. Price's opinions. Indeed, the ALJ's general statement that the record, *as a whole*, warrants rejection of Dr. Price's opinions is the *opposite* of the specific explanation required when an ALJ provides a treating physician's opinion less than controlling weight. Because the ALJ offered no meaningful discussion or analysis of Dr. Price's opinions, the Court is unable to provide a "meaningful review" of the ALJ's decision to reject those opinions.

*Id.* at *3 (emphasis in original) (internal citations omitted). Here too, then, the ALJ's statement that Dr. Makki's opinions are "not supported by the treatment records" (Tr. 17) is "unhelpful boilerplate that sheds no light on precisely which portions of the record undermine [his] opinions." *Rines*, 2017 WL 4786144, at *3.

In seeking to bolster the ALJ's conclusion that Dr. Makki's opinions are "not supported by the treatment records," the Commissioner cites to a treatment note from October 29, 2013, in which Dr. Makki described Johnson as fairly groomed, with clear, logical, and directed speech; no loose associations or flight of ideations; no suicidal or homicidal ideations; and no auditory or visual hallucinations. (Doc. #16 at 7 (citing Tr. 446)). The problem, however, is that the ALJ

did not point to this record – or to any other specific record, for that matter – in explaining exactly how Dr. Makki's opinions are "not supported by the treatment records." (Tr. 17). Moreover, the very record cited by the Commissioner reflects that, on the same day, Johnson reported difficulty concentrating, mood swings with episodes of depression, inability to make decisions, confusion, and memory loss. (Tr. 452). And, a mental status examination performed at the same time revealed that Johnson was distractible, had impaired recent and remote memory, and exhibited paranoid thought process. (Tr. 454-55). Thus, even giving the ALJ the benefit of the doubt and assuming that because he discussed this October 2013 treatment note elsewhere in his decision, he believed it to be one of the records undercutting Dr. Makki's opinions, this treatment note at least arguably suggests otherwise.

Moreover, there is other evidence in the record that *supports* Dr. Makki's opinions, none of which was discussed by the ALJ. For example, at a psychiatric evaluation in September 2012, Dr. Makki noted that Johnson had pressured and circumstantial speech; her mood and affect were characterized as euphoric, labile, and tearful; her thought content was paranoid; and her remote, recent, and immediate memory were all impaired. (Tr. 413-16). In July 2013, Dr. Makki noted that Johnson was depressed, hyper, irritable, and paranoid. (Tr. 351). In April 2014, Dr. Makki observed that Johnson had pressured speech and a euphoric mood. (Tr. 536). A mental status examination performed in October 2014 revealed that Johnson had impaired memory, was easily distracted, and had only fair judgment, with complaints of insomnia, fatigue, abrupt changes in mood, anxiety, difficulty concentrating, and racing thoughts. (Tr. 579, 594). Similarly, in April 2015, Dr. Makki described Johnson as neat with pressured speech and euphoric mood. (Tr. 653).

The foregoing shows that rather than meaningfully weighing and discussing the

competing evidence, the ALJ failed to mention or address some of the most salient medical evidence which paints a picture very different than the one presented in the ALJ's decision. While the ALJ need not address every piece of evidence in the record, *Kornecky*, 167 F. App'x at 508, he does not fairly discharge his duties when he fails to discuss significant contradictory portions of the very records on which he relies the most. *See Minor v. Comm'r of Soc. Sec.*, 2013 WL 264348, at *17 (6th Cir. Jan. 24, 2013); *Roberts v. Colvin*, 2015 WL 181658, at *10 (E.D. Mich. Jan. 14, 2015) (noting that while ALJ need not discuss all record evidence, "the quality and volume of evidence not discussed by the ALJ may 'raise[] serious doubts about the supportability of the ALJ's RFC finding' and overall conclusions") (quoting *Wilcox v. Comm'r of Soc. Sec.*, 2014 WL 4109921, at *7 (E.D. Mich. Aug.19, 2014)). Here, given the existence of significant evidence that at least arguably appears consistent with Dr. Makki's opinions, the Court cannot conclude that the ALJ's decision to discount Dr. Makki's opinions as "not supported by the treatment records" is a "good reason." As such, remand is required.[4]

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #16**) be **DENIED**, Johnson's Motion for Summary Judgment (**Doc. #15**) be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g),

---

[4] In her motion, Johnson asserts that "an immediate award of benefits is proper in this case or remand for further proceedings." (Doc. #15 at 14). "Only when 'all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits' should a court reverse an ALJ's decision *and* immediately award benefits." *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994) (emphasis in original) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). Otherwise, the proper course is to remand the case to the ALJ. In light of the analysis set forth above, the Court cannot conclude that all "essential factual issues have been resolved and the record adequately establishes [Johnson's] entitlement to benefits," *Faucher*, 17 F.3d at 176, and finds instead that remand under sentence four of 42 U.S.C. § 405(g) is necessary for further evaluation of Dr. Makki's opinions.

this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

Dated: December 21, 2017                s/David R. Grand
Ann Arbor, Michigan                 DAVID R. GRAND
                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 21, 2017.

                                       s/Eddrey O. Butts
                                       EDDREY O. BUTTS
                                       Case Manager